NOT FOR PUBLICATION                                          [Dkt. 7, 19]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| P.R.B.A. CORPORATION,<br><br>    Plaintiff,<br><br>            v.<br><br>HMS Host Tolls Roads, Inc., et al.,<br><br>    Defendants. | Civil No. 1:12-CV-07914 (RMB/JS)<br><br>**OPINION** |

Appearances:

F. Michael Daily, Jr.
Sentry Office Plaza
216 Haddon Ave., Suite 100
Westmont, NJ 08108

    Attorneys for Plaintiff

Christopher R. Paldino
Wolff Samson
One Boland Drive
West Orange, NJ 07052

    Attorneys for Defendants

**Bumb**, UNITED STATES DISTRICT JUDGE:

    Plaintiff P.R.B.A. Corporation t/a Bare Exposure ("Plaintiff") has moved for a preliminary injunction [Dkt. 7]. Defendants HMS Host Toll Roads, Inc. ("Host"), South Jersey Transportation Authority ("SJTA"), and New Jersey Turnpike Authority ("NJTA") (collectively, the "Defendants") oppose the

1

motion and have moved for summary judgment. [Dkt. 19] For the reasons that follow, both motions are DENIED without prejudice.

I.   Background

   A.   Factual

Plaintiff operates a nude dance club in Atlantic City, New Jersey. Ariemma Declaration ¶ 2. It has contracted with CTM Media Group ("CTM"), an advertising agency, to display brochures advertising the club on display racks owned by CTM in New Jersey area rest stops. Id. at ¶ 5-6. The stops are property of Defendants NJTA and SJTA, governmental entities created under New Jersey law. N.J. STAT ANN. § 27:25A-1 (West 2013) (authorizing SJTA); N.J. STAT ANN. § 27:23-1 (West 2013) (authorizing NJTA). The rest stops are operated by Host, which leases the spaces from NJTA and SJTA. Defendant's Statement of Material Facts ¶¶ 3-7. While Host leases the spaces, it is an independent Delaware corporation, and state employees are not involved in its management and routine operations. Vargas-Garrison Aff. ¶ 7; Heck Aff. ¶ 8.

Plaintiff's brochures, which consist of a woman's face with the masthead "Bare Exposure . . . Atlantic City's Only All Nude Entertainment," (Plaintiff's Complaint Exhibit A) was displayed without incident at CTM owned display racks until the fall of 2012. At that time, however, Host employee Greg Dion learned of

the brochure's placement, and concerned that the brochures were potentially inappropriate, Dion removed the brochures from the display racks. Dion Aff. ¶ 12. According to Dion, he: (1) "did not consult with, report to, or receive any direction, input, or encouragement from any representative of the New Jersey Turnpike Authority or the South Jersey Transportation Authority;" and (2) was not aware of "New Jersey Administrative Code Sections 19:2-1.2, 19:2-5.7, or 19:9-1.13(d)" (the "NJAC Provisions"). Id. at ¶¶ 12-13.

Section 19:2-5.7 previously regulated distrubition of certain materials on the expressway, but expired in November 22, 2012. See N.J. Admin. Code § 19:2-5.7 (2012). Section 19:2-1.2 is a definitional section that does not proscribe any conduct. N.J. Admin. Code § 19:2-1.2. Section 19:9-1.13 prohibits persons from entering the New Jersey Turnpike or Garden State Parkway for the purpose of distributing samples, pamphlets or advertising matter of any sort, except as expressly authorized by the NJTA. N.J. Admin. Code § 19:9-1.13; N.J. Admin. Code § 19:9-1.1 (providing definitions).

According to Dion, Dion was unaware of any of these provisions and instead "believed [he] was exercising HMS Host's authority under the CTM" contract. Id. at ¶ 13. Officials at NJTA and SJTA corroborated Dion's account, affirming that they

were not personally involved in or aware of the decision to remove the brochures, nor aware of anyone else at NJTA or SJTA being involved. Vargas-Garrison Aff. ¶ 7; Heck Aff. ¶ 8.

    B.   <u>Procedural</u>

On December 28, 2012, Plaintiff filed this action. On February 13, 2013, Plaintiff filed an amended complaint alleging four counts – all based on the removal of Plaintiff's brochures. They are:

    (1)   a First Amendment violation;

    (2)   a First Amendment facial challenge to the NJAC Provisions;

    (3)   Fourteenth Amendment due process and equal protection violations; and

    (4)   speech, association, due process, and equal protection violations of article 1 of the New Jersey Constitution.

Amended Complaint ¶¶ 34-45.

On March 18, 2013, Plaintiff moved for a preliminary injunction against Defendants, seeking to enjoin them from removing the brochures. On April 1, 2013, Defendants moved for summary judgment. Plaintiff opposes Defendant's motion. It also argues that, pursuant to Federal Rule of Civil Procedure 56(d), summary judgment is premature because further discovery is needed. In support of that argument, it has submitted a declaration consistent with Rule 56(d) that "[P]laintiff has had

[no] opportunity to conduct discovery. As a result the [P]laintiff is unable to present any facts that would contradict Defendants' Material Statement of Facts #12, 15, 16, 17, 26, 27, 28, and 29." Declaration of Michael Daily in Opposition to Motion for Summary Judgment ("Daily Declaration").

II. <u>Discussion</u>

The Court first addresses Plaintiff's motion for preliminary injunction. It then addresses Defendants' motion for summary judgment.

    A. <u>Motion for Preliminary Injunction</u>

A party moving for a preliminary injunction must establish that: (1) it is likely to succeed on the merits; it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. <u>Winter v. Natural Resource Defense Council</u>, 555 U.S. 7, 20 (2008). The moving party's failure to establish a likelihood of success on the merits "must necessarily result in the denial of a preliminary injunction." <u>Am. Express Travel Servs. v. Sidamon-Eristoff</u>, 669 F.3d 359, 366 (3d Cir. 2012) (quoting <u>In re Arthur Treacher's Franchisee Litig.</u>, 689 F.2d 1137, 1143 (3d Cir. 1982). Here, because Plaintiff cannot satisfy the likelihood of success factor for any of its claims at this juncture, Plaintiff is not entitled to

5

a preliminary injunction, and it is unnecessary to address the remaining factors.

1. Count 1

Plaintiff cannot establish a likelihood of success on Count 1 because that claim requires, and Plaintiff has failed to offer, evidence of state action. See Benn v. Universal Health Sys., 371 F. 3d 164 (3d Cir. 2004)(holding that constitutional claims require state action).

State action may be found only if there is such a "close nexus" between the State and the challenged action that seemingly private behavior may be attributed fairly to the state. Brentwood Academy v. Tennessee Secondary School Athl. Ass'n, 531 U.S. 288, 296 (2001). This inquiry is fact-intensive, and there is no single test for establishing such an attribution. Id.; see also Benn, 371 F. 3d at 171. The Supreme Court in Brentwood has, however, identified five separate approaches for attributing conduct to the state:

- (1) When the conduct results from the State's exercise of coercive power or when the State has provided significant encouragement, either overt or covert; or

- (2) When a private actor operates as a willful participant in joint activity with the State; or

- (3) When a nominally private entity is controlled by an agency of the State; or

- (4) When a nominally private entity has been delegated a public function by the State; or

6

>   (5) When a nominally private entity is entwined with governmental policies, management, or control.

Brentwood, 531 U.S. at 296. Applying these five approaches to the facts of Plaintiff's case, "none of these . . . points toward the presence of state action." Benn, 371 F.3d at 171.[1]

First, it is unlikely that Plaintiff can establish that New Jersey has "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982). At present, the only evidence is that NJTA and SJTA were uninvolved in the removal of the brochures. Vargas-Garrison Aff. ¶ 7; Heck Aff. ¶ 8.

Second, for the same reason, it is unlikely that Plaintiff can establish that Host was a "willful participant in joint activity" with New Jersey. Lugar v. Edmondson Oil Co., 457 U.S. 922, 941 (1982) (internal quotation marks omitted).

Third, it is unlikely that Plaintiff can establish that Host was "controlled by an agency of the state." Brentwood, 531

---

[1] Plaintiff has argued that this Court's state action analysis should be guided by the Supreme Court's decision in Burton v. Wilmington Parking Auth. Burton, 365 U.S. 715 (1961). But the Supreme Court has since cast doubt on Burton, describing it as an "early" case with a "vague" standard of state action that has since been refined. Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 57 (1999). And the Third Circuit has suggested that Burton is limited to its specific facts. Crissman v. Dover Downs Entertainment Inc., 289 F.3d 231, 242 (3d Cir. 2002). Accordingly, this Court will not rely on Burton in considering whether Plaintiff is likely to succeed in demonstrating state action.

U.S. at 296 (internal quotation marks omitted). Host is an independent Delaware corporation, Amended Complaint ¶ 2, and state employees are not involved in its management or routine operations. Vargas-Garrison Aff. at ¶ 5; Heck Aff. at ¶ 5.

Fourth, it is unlikely that Plaintiff can establish that Host's conduct was part of a public function that the state delegated to Host. Brentwood, 531 U.S. at 296. "In considering the public function issue, we must ask whether *the challenged action relates to a function* that has been traditionally the exclusive prerogative of the State." Benn, 371 F.3d at 172 (emphasis added)(internal quotation marks omitted)(citing Jackson v. Metropolitan Edison Co., 419 U.S. 345 (1974)). It was Plaintiff's burden, and Plaintiff has failed, to present any factual evidence or legal citation that the maintenance of rest stop brochure racks has been traditionally the exclusive prerogative of the State.  See Gannett Satellite Information Network, Inc. v. Berger, 894 F.2d 61, 67 (3d Cir. 1990)(finding airport newspaper concessionaires were not performing public function).

Fifth, it is unlikely that Plaintiff can establish that Host's conduct is "entwined with governmental policies," management, or control. Brentwood, 531 U.S. at 296; Benn, 371 F.3d at 172. That Defendant Host leases the facilities from the

NJTA and SJTA is insufficient to establish the type of entanglement necessary for state action. See Gannett, 894 F.2d at 67 (finding no entanglement between private newsstands that leased space from the Port Authority at Newark Airport). Plaintiff has also failed to present evidence that SJTA or NJTA were involved in the decision to remove the brochures, nor evidence that the removal was motivated by an effort to comply with governmental policies or regulations, such as the NJAC Provisions.[2]

Because Plaintiff is unlikely to establish state action using any of these five approaches, Plaintiff is unlikely to succeed on the merits of Count 1.

    2.    Count 2

Plaintiff is unlikely to succeed on the merits of its facial challenge to the NJAC Provisions because this challenge does not appear justiciable. To begin with, § 19:2-5.7 expired on November 22, 2012, and § 19:2-1.2 merely provided definitions

---

[2] After briefing in this matter was completed, Plaintiff submitted notice of supplemental authority highlighting the decision in Am. Atheists, Inc. v. Port Auth. of N.Y. & N.J., No. 11-6026, 2013 WL 1285321 (S.D.N.Y. March 28, 2013). In that case, the New York court found that the decision of the National September 11 Memorial and Museum at the World Trade Center Foundation, Inc. to display a large metal cross pulled from the wreckage of the World Trade Center constituted state action based on pervasive entwinement. Id. at 6. That decision is inapposite. There, unlike here, there was significant evidence of state action, in that the Port Authority of New York and New Jersey donated the cross, provided property and constructed the facility for its display, had an ongoing relationship with the Foundation, and some directors of the Foundation were state-appointed. Id.

for that provision.  Thus, Plaintiff's claim with respect to those statutes appear moot.[3] See generally Kremens v. Bartley, 431 U.S. 119, 128 (1977)(mooting claims based on a repealed statute).

In addition, Plaintiff appears to lack standing to challenge any of the NJAC Provisions. To assert a facial constitutional challenge to these provisions, Plaintiff must demonstrate (1) an injury in fact (2) fairly traceable to the code provision, which (3) can be redressed by the court. See SEIU v. Municipality of Mt. Lebanon, 446 F.3d 419, 422-23 (3d. Cir. 2006).

First, Plaintiff has failed to establish an injury in fact. To meet this burden, a plaintiff must have suffered an invasion of a legally protected interest that is actual or imminent, not conjectural or hypothetical. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); Kress v. New Jersey, 455 Fed. App'x. 266, 270 (3d. Cir. 2011). "[A]llegations of a subjective chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm" and a "real and imminent fear" is required.  Clapper v. Amnest Inter. USA, 133 S.Ct. 1138, 1152 (2013)(quotation omitted); National

---

[3]    Plaintiff does not dispute that this provision has expired.

10

Organization for Marriage, Inc. v. Walsh, 714 F.3d 682, 689 (2d Cir. 2013).

Here, the only one of the NJAC Provisions that remains in effect, § 19:9-1.13, prohibits persons from entering the Garden State Parkway or New Jersey Turnpike for the purpose of distributing samples, pamphlets or advertising matter of any sort, except as expressly authorized by the NJTA or SJTA.  But Plaintiff has offered no evidence that: (1) its brochures were removed pursuant to this provision; (2) the NJTA or SJTA has threatened to enforce this provision against Plaintiff in the future, and the NJTA would not authorize Plaintiff's brochure display; or (3) the provision would even apply to Plaintiff's display of brochures, given that it would be displayed at a rest stop and not on the expressway itself.  Without more, Plaintiff's claim is, at best, a conjectural concern about future harm or a subjective chill - not an injury in fact. See Dealmagro v. New Jersey Election Law Enforcement Comm'n, No. 10-4149, 2011 WL 255819, at *4 (D.N.J. Jan. 25, 2011) (citing Navegar, Inc. v. United States, 103 F.3d 994, 998 (D.C. Cir. 1997) for the proposition that litigants only have standing based on threat of future injury if the injury is "credible and immediate, and not merely abstract or speculative.").

Second, for these same reasons, Plaintiff cannot fairly trace any injury in fact to the NJAC Provisions. Third, Plaintiff's injury cannot be redressed by this Court, since any finding by this Court with respect to the NJAC Provisions would not prevent Host, a private company, from removing Plaintiff's brochures.

Because Plaintiff is unlikely to establish standing to challenge the NJAC Provisions, and because Plaintiff's claim against § 19:2-5.7 appears moot, Plaintiff is unlikely to succeed on the merits of Count 2.[4]

### 3. Count 3

Plaintiff is unlikely to succeed on the merits of its Fourteenth Amendment due process and equal protection claims. Those claims require, like Plaintiff's First Amendment claim, the presence of state action and, for the reasons discussed above, Plaintiff has failed to show a likelihood of success in demonstrating state action under federal law. See Benn, 371 F.3d at 164.

### 4. Count 4

---

[4] Plaintiff also challenges § "19:2-1.2(a)" and quotes language purportedly from this provision. Plaintiff's Brief in Support of Motion for Preliminary Injunction at 20. However, no such provision exists in the New Jersey Administrative Code. The Court therefore does not address this provision further.

Finally, Plaintiff is also unlikely to succeed on the merits of its state law constitutional claims. Plaintiff bore the burden of showing a likelihood of success on the merits of these claims, but failed to address them. See Winter, 555 U.S. at 20. Plaintiff has thus failed to establish a likelihood of success on the merits of its due process, equal protection, speech, and association claims under the New Jersey Constitution.

In any event, from this Court's own analysis, it appears that Plaintiff would be unlikely to succeed on these claims. Plaintiff's due process and equal protection claims require, without exception, the presence of state action. See Elias v. Educational Comm'n for Foreign Medical Graduates, No. C-82-08, 2010 WL 4340640, at *2 (N.J. Super. Ct. App. Div. Nov. 4, 2010) (dismissing due process and equal protection claims under the New Jersey and Federal Constitutions after establishing a lack of state action pursuant to federal state action standards). Plaintiff's free speech and association claims generally require the presence of state action, but New Jersey courts have allowed claims without state action where the speech was made in a public-like forum such as shopping malls and universities. E.g., New Jersey Coalition Against War in the Middle East v. JMB Realty Corp., 650 A.2d 757 (N.J. 1994). While New Jersey courts

have not specifically opined on whether highway rest stops are within the ambit of this exception, they have held that highway strip malls are outside it. Coalition, 650 A.2d at 781. They have also cast "doubt" on whether this exception is at all applicable to commercial speech. Id. In determining whether there is state action under New Jersey law, courts have generally tracked the federal state action doctrine analysis. See Elias, 2010 WL 4340640 at *2; Moe v. Seton Hall University, No. CIVA2:09-01424, 2010 WL 1609680, at *3 (D.N.J. April 20, 2010).

With respect to Plaintiff's due process and equal protection claims, Plaintiff is unlikely to be able to demonstrate state action under New Jersey law, given the large extent to which New Jersey law tracks federal law, and this Court's federal state action doctrine analysis detailed above. With respect to Plaintiff's free speech claim, the state action exception does not appear applicable given that: (1) the most analogous locale to highway rest stops that has been ruled upon, highway strip malls, are firmly outside the exception; and (2) the speech at issue is commercial speech, which has strongly been suggested to be outside the exception. Accordingly, state action appears to be required for this claim, and thus this

claim would fail for the same reason as the Plaintiff's other state law claims.

Accordingly, Plaintiff has failed to demonstrate a likelihood of success on its state law claims.

     5.   A Preliminary Injunction Is Unwarranted

Because Plaintiff is unlikely to establish state action or any exception to the state action requirement, Plaintiff is unlikely to succeed on the merits, and a preliminary injunction is unwarranted. Sidamon-Eristoff, 669 F.3d at 366 (holding that a preliminary injunction is unwarranted where a movant cannot demonstrate a likelihood of success on the merits). Accordingly, Plaintiff's motion for preliminary injunction is DENIED without prejudice.

    B.   Motion for Summary Judgment

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The nonmovant can challenge a motion for summary judgment by "asserting that a fact cannot be or is genuinely disputed[.]" Fed. R. Civ. P. 56(c)(1). In some cases, a motion for summary judgment may be "premature" if made before the parties have conducted discovery. Celotex v. Catrett, 477 U.S. 317, 326 (1986). Pursuant to Federal Rule of Civil Procedure

15

56(d), a district court may deny summary judgment where the party opposing summary judgment demonstrates, by affidavit or declaration, that it cannot present facts essential to justify its opposition and indicates to the district court its needs for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information. Abulkhair v. City Bank & Assocs., 43 F. App'x 58, 61-62 (3d Cir. 2011).

Here Plaintiff contends that Defendant's motion is premature pursuant to Rule 56(d). This Court agrees. See DiMarco v. Rome Hosp. and Murphy Hosp., No. 88-CV-1258, 1991 WL 336000, at *3 (July 1, 1991 N.D.N.Y.) (denying motion for summary judgment as premature and allowing parties to conduct discovery on the question of state action). Plaintiff properly proffered a Rule 56(d) declaration indicating that it lacked vital information on the state action issue and that it had been unable to obtain information because discovery is not yet underway. Daily Declaration ¶¶ 2-3. Accordingly, the Defendants' summary judgment motion is DENIED without prejudice.

III. Conclusion

For the foregoing reasons:

(1) Plaintiff's motion for a preliminary injunction is denied without prejudice;

(2) Defendants' motion for summary judgment is denied without prejudice; and

(3) The parties shall meet and confer to develop a joint discovery plan, and shall notify Magistrate Judge Schneider, on or before August 9, 2013, whether they have agreed to a joint discovery plan.

                                      s/Renée Marie Bumb  
                                      RENEE MARIE BUMB  
                                      United States District Judge

Date: July 19, 2013