NOT FOR PUBLICATION                              [Docket No. 51]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| P.R.B.A. CORPORATION,<br><br>    Plaintiff,<br><br>                    v.<br><br>HMS HOST TOLL ROADS INC., et al.,<br><br>    Defendants. | Civil No. 12-7914 (RMB/JS)<br><br>**OPINION** |

<u>Appearances</u>:

F. Michael Daily, Jr.
Sentry Office Plaza
216 Haddon Ave., Suite 100
Westmont, NJ 08108
        Attorneys for Plaintiff

Christopher R. Paldino
Wolff Samson
One Boland Drive
West Orange, NJ 07052
        Attorneys for Defendants

**BUMB**, UNITED STATES DISTRICT JUDGE:

        Defendants HMS Host Toll Roads, Inc. ("Host"), South Jersey

Transportation Authority ("SJTA"), and New Jersey Turnpike

Authority ("NJTA") (collectively, the "Defendants") have filed a

renewed motion for summary judgment [Docket No. 51].  Plaintiff

P.R.B.A. Corporation t/a Bare Exposure ("Plaintiff") has opposed

1

Defendants' motion, in part.  For the reasons set forth below,
the Defendants' motion is granted.

I.  Background[1]

    *a. Host, SJTA and NJTA*

Plaintiff is a New Jersey corporation that operates a
gentleman's club in Atlantic City, New Jersey, offering nude
entertainment.  Defendants' Statement of Material Facts ("DSMF")
and Plaintiff's Response ("PR") at ¶¶ 1-2.  Host, a private
corporation, leases service plazas, which are located along the
Garden State Parkway and the Atlantic City Expressway, from SJTA
and NJTA (together referred to as the "Authorities").  Id. at ¶¶
2-7.  Host operates restaurants, gift shops, and convenience
stores in the service plazas it leases from the Authorities.  Id.
at ¶ 10.  The Authorities are not involved in Host's day-to-day
operation and management of the service plazas with the
exception of parking areas (e.g., trash removal), exteriors of
the buildings, and the building lobbies.  PR at ¶ 12.  Plaintiff
avers that the lobbies provide an area where the public reviews
a mix of communications from both the private and public
entities.  PR at ¶ 12.  This case stems from the removal of
Plaintiff's brochures from the service plazas, which contain the

---

[1] As stated by the Plaintiff, "the Material Facts necessary to
decide this motion are generally not in dispute."  Pl.'s Br. at
2.

2

name Bare Exposure and advertise "Atlantic City's Only All Nude Entertainment."  Defs.' Ex. 2.

The contracts between Host and the Authorities are silent with respect to the placement of brochures and other marketing materials in the lobbies of the service plazas.  DSMF & PR at ¶ 14.  There is no evidence that the Authorities ever instructed or directed Host about the placement of brochures.  Id. at ¶ 15. That said, Plaintiff contends that the Authorities have mandated the placement of communications in common areas of the plazas including photos of the current Governor of New Jersey, a photo of the late Senator Farley in the main lobby of a rest area, and a government information booth.  PR at ¶ 15.  It is undisputed, however, that no representative of the Authorities has ever instructed Host to remove a brochure or advertisement from the lobby of a service plaza along the Garden State Parkway or Atlantic City Expressway.  DSMF & PR at ¶ 17.

  *b. Host and CTM*

In 2003, Host entered into a contract with CTM Media Group, Inc., a/k/a CTM Brochure Display, Inc., (the "Agreement").  Id. at ¶ 18.  Per this Agreement, CTM places and services CTM owned brochure and display racks in the lobbies of the service plazas for which CTM pays Host the greater of a minimum monthly payment or 40% of the gross revenues generated by the sale of brochure

distribution.  Id. at ¶ 20.  The Agreement provides that Host
"must approve all brochures or publications of any kind" prior
to placement.  Id. at ¶ 21.

      *c. Removal of Bare Exposure's Brochures*

      In 2012, Kevin Diamond, a Host employee, discovered the
Bare Exposure brochure in one of the display racks in a Host-
leased service plaza.  Id. at ¶ 30.  Diamond sent a copy of the
brochure to Greg Dion, Host's General Manager of New Jersey
Motorway Operations.  Id. at ¶ 31.  Dion contacted CTM and
instructed its representative to remove all Bare Exposure
brochures from the service plazas.  Id. at ¶ 33.  The parties
agree that Mr. Dion's decision to have the brochures removed was
his and his alone; he did not consult with or receive any
direction from the Authorities.  Id. at ¶ 34.  He did not review
or consider any provisions of the New Jersey Administrative Code
prior to making his decision, but instead, believed he was
exercising Host's authority under the CTM Agreement.  Id. at ¶¶
41-42.  Mr. Dion testified at his deposition that he removed the
brochures because, "I felt other patrons would find them
offensive and it would cause complaints."  Pl.'s Ex. A, Dion Tr.
at 37:19-21.  Defendants contend that Dion did not consider
whether the brochures could have harmed the financial interests
of Host.  DSMF at ¶ 36.  Plaintiff denies that the financial

interests of Host were not considered in the decision to remove the brochures.  In support of this averment, Plaintiff cites Dion's deposition testimony: when Dion was asked whether "something that turns patrons . . . into complainers is something that could adversely affect the profits of . . . Host," he responded: "It's possible."  PR at ¶ 39.

> *d. Procedural Background*

Plaintiff filed this action on December 28, 2012.  On February 13, 2013, Plaintiff filed an amended complaint alleging four counts - all based on the removal of Plaintiff's brochures:

- **Count 1:** a First Amendment violation;
- **Count 2:** a First Amendment facial challenge to the New Jersey Administrative Code §§ 19:2-1.2(a), 19:2-5.7, 19:9-1.13(d)[2];
- **Count 3:** Fourteenth Amendment due process and equal protection violations; and
- **Count 4**: speech, association, due process, and equal protection violations of article 1 of the New Jersey Constitution.

Amended Complaint at ¶¶ 34-45.

On March 18, 2013, Plaintiff moved for a preliminary injunction against Defendants, seeking to enjoin them from removing the Bare Exposure's brochures.  On April 1, 2013, Defendants moved for summary judgment, which Plaintiff opposed,

---

[2] Claiming that the Code is unconstitutional because it vests the Authorities with discretion as to which persons may engage in speech and communications on their premises.

arguing that summary judgment was premature pursuant to Federal Rule of Civil Procedure 56(d).  In an Opinion addressing both motions, this Court denied Defendants' motion for summary judgment as premature and denied Plaintiff's motion for a preliminary injunction, finding that "Plaintiff cannot satisfy the likelihood of success factor for any of its claims at this juncture."  Docket No. 36 at 5.  More specifically, this Court found that Plaintiff could not demonstrate a likelihood of success on the merits of Counts 1, 3 and 4 because Plaintiff had failed to offer any evidence of state action.  Docket No. 36 at 6, 12-13.  This Court also found that Plaintiff was unlikely to succeed on the merits of Count 2 because the challenge appeared to be non-justiciable and Plaintiff lacked standing.  Id. at 9-10.

Defendants have filed the instant renewed motion for summary judgment arguing that:

- They are entitled to summary judgment on Counts 1 and 3 of Plaintiff's amended complaint because Plaintiff cannot establish that Host's decision to remove the brochures constitutes state action;
- Summary judgment is warranted on Count 2 because Plaintiff lacks standing to assert a facial challenge to the provisions of the New Jersey Administrative Code; and
- Defendants are entitled to summary judgment on Count 4 because removal of the brochures does not violate Article 1 of the New Jersey Constitution.

6

In response to the instant motion, Plaintiff has conceded that "it does not have a basis for facially challenging the administrative regulations referred to in its amended complaint." Pl.'s Br. at 1.  Therefore, the Court need not discuss the substance of Defendants' arguments regarding Count 2 of Plaintiff's amended complaint and will grant summary judgment in favor of Defendant.

With respect to the remaining counts, Plaintiff advances only one argument: the requisite state action is present under the "entwinement test," and concedes that "an adverse finding on [the presence of state action] dooms all four counts of its complaint." Pl.'s Br. at 1.  Therefore, the Court will focus this Opinion on the facts and arguments surrounding whether state action is present under the entwinement test – i.e., whether Plaintiff has presented evidence creating a genuine dispute of material fact as to whether Mr. Dion's decision to remove the Bare Exposure Brochures from the service plazas is attributable to the Authorities, and thus constitutes state action.

II.  Standard of Review

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R.
Civ. P. 56(a). A fact is "material" if it will "affect the
outcome of the suit under the governing law . . . ." Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is
"genuine" if it could lead a "reasonable jury [to] return a
verdict for the nonmoving party." Id. When deciding the
existence of a genuine dispute of material fact, a court's role
is not to weigh the evidence; all reasonable "inferences,
doubts, and issues of credibility should be resolved against the
moving party." Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307
n.2 (3d Cir. 1983). However, a mere "scintilla of evidence,"
without more, will not give rise to a genuine dispute for trial.
Anderson, 477 U.S. at 252. Further, a court does not have to
adopt the version of facts asserted by the nonmoving party if
those facts are "utterly discredited by the record [so] that no
reasonable jury" could believe them. Scott v. Harris, 550 U.S.
373, 380 (2007). In the face of such evidence, summary judgment
is still appropriate "where the record . . . could not lead a
rational trier of fact to find for the nonmoving party . . . ."
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
587 (1986).

The movant "always bears the initial responsibility of
informing the district court of the basis for its motion, and

identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). The non-movant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. N.J. State Police, 71 F.3d 480, 484 (3d Cir. 1995); Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009)) ("[S]peculation and conjecture may not defeat summary judgment.").

III. Analysis

   a. Counts 1 and 3

Counts 1 and 3 of the amended complaint present claims for constitutional violations asserted via 42 U.S.C. § 1983.  To present a viable § 1983 claim, Plaintiff must demonstrate that

9

it was deprived of a federal constitutional right by an individual acting under color of state law.  See Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009).  State action may be found only if there is such a "close nexus" between the State and the challenged action that seemingly private behavior may be attributed fairly to the state.  Brentwood Academy v. Tennessee Secondary School Athl. Ass'n, 531 U.S. 288, 296 (2001); Benn v. Universal Health Sys., 371 F. 3d 164, 171 (3d Cir. 2004)(holding that constitutional claims require state action).

The state action inquiry is fact-intensive, and there is no single test for establishing such an attribution.  Id.  The Supreme Court in Brentwood has, however, identified five separate approaches for attributing conduct to the state:

(1) When the conduct results from the State's exercise of coercive power or when the State has provided significant encouragement, either overt or covert; or

(2) When a private actor operates as a willful participant in joint activity with the State; or

(3) When a nominally private entity is controlled by an agency of the State; or

(4) When a nominally private entity has been delegated a public function by the State; or

(5) When a nominally private entity is entwined with governmental policies, management, or control.

Brentwood, 531 U.S. at 296.

10

Plaintiff's arguments focus entirely on the "entwinement test," which requires that the private entity be entwined with governmental policies or that the government is entwined in that entity's management or control.  <u>Brentwood</u>, 531 U.S. at 296. The critical question under the entwinement test is whether the "nominally private character of [the defendant] is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings and there is no substantial reason to claim unfairness in applying constitutional standards to it."  <u>Id.</u> at 298.

Plaintiff's "entwinement" arguments rest on: 1) "the degree to which the governmental entities in actual practice reserved the right to make expressive communications on behalf of themselves and other governmental entities in the areas leased to [Host]" and 2) "whether the removal of the [P]laintiff's brochures had a profit motivation behind it."  Pl.'s Br. at 2.

In support of the first argument, Plaintiff states that the Authorities "continued to treat the common areas of the leased facilities as [their] own property, communicating without any prior authorization from [Host] messages it deemed important to the traveling public." Pl.'s Br. at 4.  Such communications are exemplified by the portraits of government officials and a government information booth in the service plazas near the

11

brochure racks at issue.  Without citing any evidence in the record, Plaintiff concludes that the treatment of common areas "was done in such a manner that a reasonable patron would tend to assume that all the messages being presented were those of the respective [A]uthorities." Id.  With respect to whether the removal of the brochures had a profit motivation, Plaintiff admits that Mr. Dion's testimony "did not directly concede this point" but, nevertheless, argues that he feared patrons would complain about the brochures and "conceded that patrons who are complainers could possibly adversely affect profits." Id. at 2. Finally, Plaintiff seeks to distinguish this case from other cases where state action was not found, arguing that the patrons of the plazas pay tolls to the public entities and that the service plazas, as rest areas, were originally a public function.

In response, the Defendants argue that the evidence is undisputed that the Authorities played no role in the challenged action – i.e., the removal of the Bare Exposure's brochures. Moreover, the fact that there are photos of government officials and an information booth in one of the service plazas fails to show "that the Authorities are entwined in the management of Host or that Host's decision to remove the brochures was entwined with governmental policies." Defs.' Reply Br. at 4

12

n.3.  In support of their arguments that no state action is
present, Defendants cite several cases demonstrating that
federal courts will decline to characterize private entities as
state actors when government officials are not involved in the
entities' structure and management.  See e.g., Gonzalez-
Maldonado v. MMM Healthcare, Inc., 693 F.3d 244 (1st Cir.
2012)("'public entwinement in the management and control' of a
private entity can create a basis for state action, but the
requisite entwinement exists only when government actors manage
or exercise control over a nominally private entity.")(internal
citations omitted).  The Defendants then point to the undisputed
evidence of record showing that the Authorities never instructed
or directed Host about the placement of brochures.  Moreover,
there is no dispute that Host alone, via Mr. Dion, made the
decision to remove the Bare Exposure brochures from the racks in
the plazas.  As such, Defendants argue that the Authorities
played no role in the complained-of activity and, therefore, the
decision to remove the brochures does not constitute state
action.

In addition, Defendants contend that communication in
common areas, i.e., an information booth and hanging portraits
of government officials in the plaza lobbies, fails to
demonstrate the pervasive entwinement "necessary to equate Host

13

with the Authorities, particularly when these activities have
nothing to do with the placement and removal from the brochure
racks in the Service Plazas." Defs.' Reply Br. at 15.
Defendants also argue that Plaintiff's attempt to create an
issue of fact as to whether Mr. Dion's decision to remove the
brochures was motivated by profit has no relevance to the
entwinement test.  Id. at 15.  Instead, profits were relevant
under the "symbiotic relationship test" in Burton v. Wilmington
Parking Auth., 365 U.S. 715 (1961), a case that has been limited
to its unique facts.  Defs.' Br. at 15.[3]  Defendants argue that
even if Burton were applicable, the issue was not merely one of
profit motive, but rather whether the constitutional violation
at issue was indispensable to the success to the collaboration
between the state and private entity.  Defs.' Br. at 15.

Finally, with respect to the Plaintiff's argument that the
service plazas were originally a public function and that the

_____

[3] As correctly pointed out by Defendants, in its prior Opinion,
this Court stated with following with respect to Burton:
     [T]he Supreme Court has since cast doubt on Burton,
     describing it as an "early" case with a "vague" standard of
     state action that has since been refined. Am. Mfrs. Mut.
     Ins. Co. v. Sullivan, 526 U.S. 40, 57 (1999). And the Third
     Circuit has suggested that Burton is limited to its
     specific facts. Crissman v. Dover Downs Entertainment Inc.,
     289 F.3d 231, 242 (3d Cir. 2002). Accordingly, this Court
     will not rely on Burton in considering whether Plaintiff is
     likely to succeed in demonstrating state action.
Docket No. 36 at 7 n.1.

Authorities are under a statutory mandate to provide such facilities, the Defendants argue that Plaintiff has failed to identify any such "mandated policies" and has failed to tie such policies to Host's decision to remove the brochures.

While the law relating to determining whether a private actor is acting under color of law is less than straightforward, what is clear is that in these types of cases, "the facts are crucial." Crissman v. Dover Downs Entertainment Inc., 289 F.3d 231, 234 (3d Cir. 2002)(stating that "little is straightforward in determining whether a private actor has acted 'under color of state law'"). Based on the undisputed facts in this case, this Court agrees that Plaintiff has failed to present evidence sufficient to demonstrate the requisite entwinement between Host and the Authorities necessary for a finding of state action. First and foremost, there is no evidence whatsoever that the Authorities were at all involved in the decision to remove the brochures, the very challenged conduct at issue, which directly undermines the possibility of state action. Brentwood, 531 U.S. at 295 ("state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'")(emphases added). The undisputed facts make clear that Mr. Dion's decision to have the brochures

15

removed was his and his alone; he did not consult with or
receive any direction from the Authorities.  DSMF & PF at ¶ 34.
Moreover, he did not review or consider any provisions of the
New Jersey Administrative Code prior to making his decision, but
instead, he believed he was exercising Host's authority under
the CTM Agreement.  Id. at ¶¶ 41-42.  Therefore, this Court
cannot find that there is a disputed issue of fact as to whether
there is a close nexus between the State and the challenged
action – i.e., the brochure removal.

With respect to Plaintiff's argument that communications in
the common areas of the service plazas somehow supports a
finding of state action, this Court finds that Plaintiff has
presented no evidence beyond mere argument that such
communications were "done in such a manner that a reasonable
patron would tend to assume that all the messages being
presented were those of the respective authorities."  Such
conclusory assertions are insufficient to survive summary
judgment.  See Lue-Martin v. March Group, L.L.L.P., 379 Fed.
Appx. 190, 193 (3d Cir. 2010)("To survive summary judgment,
something more [than conclusory assertions] is required").

Even drawing the inferences Plaintiff urges with respect to
communications in common areas, Plaintiff still fails to show
that the state was entwined in Host's management as required to

16

find state action.  For example, there is no evidence that the Authorities ever instructed or directed Host about the placement of brochures and Plaintiff admits that Host exclusively "operates restaurants, gift shops and convenience stores in the service plazas it leases from NJTA and SJTA."  PR at ¶ 12 & 15. Thus, Plaintiff has failed to show that the Authorities are sufficiently entwined in Host's management or control as required for a finding of state action.  See Brentwood, 531 U.S. at 296; Gonzalez-Maldonado, 693 F.3d at 248 ("the requisite entwinement exists only when government actors manage or exercise control over a nominally private entity."); Gannett, 894 F.2d at 67 ("[a]bsent any explicit governmental involvement in the distribution decision of these private newsstands, the actions taken by concessionaries in this case may not be fairly attributed the Port Authority.").

Plaintiff's arguments regarding the alleged profit motive behind Mr. Dion's decision to remove the brochures are similarly unpersuasive.  As an initial matter, it is the undisputed testimony of Mr. Dion that he "never gave [the financial interests of Host] a thought" when deciding to remove the brochures.  Pl.'s Ex. A, Dion Dep. at 36:12-14.  Despite this, Plaintiff asks this Court to draw an inference from Dion's testimony that it is "possible" that people who complain are

17

less likely to deal with a merchant.  See id., at 38:1-6.  Even
if this Court were to draw such an inference, there remains no
evidence to demonstrate that the Authorities exercise the type
of control over Host needed to find state action.

     This Court previously held in the preliminary injunction
Opinion that the fact that Host leases the facilities from the
NJTA and SJTA is insufficient to establish the type of
entwinement necessary for state action.  See Gannett, 894 F.2d
at 67 (finding no entanglement between private newsstands that
leased space from the Port Authority at Newark Airport).  In its
opposition brief, Plaintiff contends that this matter is
distinguishable from Gannett because the patrons who visit the
areas have paid a toll to the public entities.  Pl.'s Br. at 4.
The Court fails to see how this fact undermines the
applicability of the decision in Gannett, where the Court's
finding of no state action rested on the fact that there was no
evidence in the record indicating that the government was
involved with the distribution decisions of private newsstands
that leased a space at Newark Airport.  Id.  Similarly, in this
case, Plaintiff admits that the State was not involved in the
decision to remove the brochures.  DSMF & PR at ¶ 34 (The
parties agree that Mr. Dion's decision to have the brochures

18

removed was his and his alone; he did not consult with or
receive any direction from the Authorities).

Finally, Plaintiff argues that the rest areas were
originally operated as public as opposed to private functions
and, relatedly, that the Authorities "have statutor[il]y
mandated policies to provide for transportation facilities for
the traveling public" that have now been transferred to a
private entity.  The law is clear, however, that just because a
private entity performs a function which serves the public does
not transform its actions to state action.  Rendell-Baker v.
Kohn, 475 U.S. 830, 842 (1982).  Moreover, as pointed out by the
Defendants, Plaintiff has failed to identify those "mandated
policies."

In sum, this Court finds that there is no evidence of
record demonstrating that the challenged action is fairly
attributable to the State entities or that the State was
entwined in Host's management or control.  Therefore, Defendants
are entitled to summary judgment on Counts 1 and 3 of
Plaintiff's amended complaint.

b. Count 4

As previously noted by this Court, in determining whether
there is state action under New Jersey law, courts have
generally tracked the federal state action doctrine analysis.

19

<u>See</u> <u>Elias v. Educational Comm'n for Foreign Medical Graduates</u>,
No. C-82-08, 2010 WL 4340640, at *2 (N.J. Super. Ct. App. Div.
Nov. 4, 2010)(dismissing due process and equal protection claims
under the New Jersey and Federal Constitutions after
establishing a lack of state action pursuant to federal state
action standards); <u>Moe v. Seton Hall University</u>, No. 09-01424,
2010 WL 1609680, at *3 (D.N.J. April 20, 2010).  Because
Plaintiff has failed to demonstrate the presence of state action
for the reasons discussed above, Defendants are entitled to
summary judgment on Count 4 of Plaintiff's amended complaint
asserted pursuant to Article 1 of the New Jersey Constitution.
<u>See</u> <u>Elias</u>, 2010 WL 4340640, at *2.  Again, the Court notes that
Plaintiff had conceded that "an adverse finding on [the presence
of state action] dooms all four counts of its complaint."  Pl.'s
Br. at 1.  This Court agrees, and the lack of state action is
fatal to Count 4.[4]

---

[4] In this Court's prior Opinion, it was noted that New
Jersey courts have allowed claims without state action where the
speech was made in a public-like forum such as shopping malls
and universities.  <u>E.g.</u>, <u>New Jersey Coalition Against War in the
Middle East v. JMB Realty Corp.</u>, 650 A.2d 757 (N.J. 1994).  That
said, New Jersey courts have not specifically opined on whether
highway rest stops are within the ambit of this exception, and
they have held that highway strip malls are outside it.
<u>Coalition</u>, 650 A.2d at 781. They have also cast "doubt" on
whether this exception is at all applicable to commercial
speech.  <u>Id</u>.  Nevertheless, the issue is academic in the instant
case as Plaintiff has not advanced any arguments in opposition

III. <u>Conclusion</u>

    For the reasons stated above, Defendants' motion for summary judgment is granted.   An appropriate Order will issue this date.

 

                                          <u>s/Renée Marie Bumb</u>
                                          RENEE MARIE BUMB
                                          United States District Judge

Date: <u>February 6, 2015</u>

---

to summary judgment that its circumstances are similar to those in <u>Coalition</u>.